**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LOGISTIC NATIONAL
SOLUTIONS LLC d/b/a LOG                    CASE NO.:
NATION, a Florida Limited
Liability Company,

      Plaintiff,

v.

SELECTIVE BARRON, LLC, a
Florida Limited Liability Company
and NATHAN BARRON, individually,

      Defendants.
_____/

# EXHIBIT A

# SALES AND PURCHASE AGREEMENT

THIS SALES AND PURCHASE AGREEMENT (Herein referred to as "Agreement") entered into on May 22, 2020 (Herein referred to as "Effective Date"), between all parties signing below (a "Party" and the "Parties") agree mutually and reciprocally to the terms and conditions stated herein and that this Agreement may be referenced from time to time in any documents or agreements in regards to the sale and purchase of:

**LEVEL 1 GOWNS**

## FACILITATOR:

| Company Name | Selective Barron, LLC |
|---|---|
| Registration No./ Tax ID | 84-2363934 |
| Company Address | 1100 Brickell Bay Drive, Suite 50i, Miami, FL 33131 |
| Contact Person Name | Nathan Barron |
| Title | President |
| Contact Person Tel. No. | (281)660-1007 |
| Contact Person E-Mail | Nathan@SelectiveBarron.com |

## PURCHASER:

| Company Name | Logistics National Solutions, LLC (dba LOG NATION) |
|---|---|
| Registration No./Tax ID | 83 |
| Company Address | 3343 Lithia Pine Crest, Suite 294, Valrico, Fl 33596 |
| Contact Rep | William Johnson Jr. |
| Title | President |
| Contact Person Tel. No. | (775)316-1669 |
| Contact Person E-Mail | LogNationsolutions@outlook.com |

## CLAUSE 01 - SCOPE

01.1 Facilitator and Purchaser, under full corporate authority and responsibility, respectively represent that Facilitator is acting in the capacity of reseller of the product as hereunder specified, and the Purchaser has the full capability to purchase the said product.

01.2 Facilitator shall produce as reasonably requested supporting documentation and evidence of the Product being certified as authentic "Commodity," as that term is defined in Clause 02, below.

## CLAUSE 02 - COMMODITY

02.1 Level 1 Disposable Isolation Gowns (the "Products").

## CLAUSE 03 - QUANTITY

03.1 The total contractual quantity of the products sold and purchased under this agreement shall be for 500,000 Pieces.

03.2 The sizes of the Products shall be (approximately) as follows :

|  |  | M | L | XL |  |
|---|---|---|---|---|---|
|  |  | _40_% of total order | _40_% of total order | _20_% of total order |  |

03.3   Note: 1 box contains 100 pieces, 10 boxes of 100 make a carton.

## CLAUSE 04 – TIME PERIOD

04.1   The Parties shall complete all tranches pursuant to this Agreement within thirty (30) days from the Effective Date.

## CLAUSE 05 – DISCLAIMER OF WARRANTY

05.1 Facilitator represents that it is selling newly manufactured product which it has the legal authority to sell and transfer title to, and that the goods being delivered will match the description and quantities in this Agreement. With respect to quality, Purchaser acknowledges that it is relying solely on its own investigations, inspections and/or examinations and has not been induced to enter this Agreement by the Facilitator or any of Facilitator's agents or representatives making any statements as to the quality or condition of the Products.

## CLAUSE 06 – LIMITATION OF LIABILITY

06.1 In no event shall Facilitator or Purchaser be liable for any consequential, indirect, incidental, special, exemplary, or punitive damages, lost profits or revenues or diminution in value, arising out of or relating to any breach of these terms, whether or not the possibility of such damages has been disclosed in advance by Purchaser or could have been reasonably foreseen by Purchaser, regardless of the legal or equitable theory (contract, tort, or otherwise) upon which the claim is based, and notwithstanding the failure of any agreed or other remedy of its essential purpose

## CLAUSE 07 – PRICE

07.1   The price of the Products shall be fixed at USD $3.43 (the "Purchase Price").

## CLAUSE 08 – PAYMENT AND BANKING PROCEDURES

08.1   Payment method shall be as follows:

   08.1.1   Upon execution of this Agreement 50% of the Purchase Price (Deposit Amount: USD $875,500.00) (the "Initial Deposit") must be sent by the Purchaser to escrow.

   08.1.2   Upon Facilitator receiving the Deposit and confirming the funds, the Seller will furnish the original below documents to the Purchaser:

      08.1.2.1   Commercial Invoice
      08.1.2.2   Packing List and others for verification
      08.1.2.3   Bill of Lading

   08.1.3   Once the said product order has been verified landed ACCEPTED AND DELIVERED the Purchaser must transfer the balance of the Purchase Price (USD $875,500.00) (the "Final Payment") to the Facilitator's account within 10 days . The Facilitator will then confirm the funds.

## CLAUSE 09 - DELIVERY

09.1   Facilitator shall arrange for the delivery as follows:

- FOB DESTINATION : 203 B Log Canoe Circle Stevensville Maryland 21666.

- Delivery: The goods are currently available for delivery. Upon receiving the Initial Deposit, the Facilitator will start the process of preparing the verification documents and bill of lading within 12 hours. Once the bill of lading is created, and is received by the purchaser, the Final Payment (USD $875,500.00) will be due to the Facilitator within 10 days after landing, 27 May 2020 failure to deliver by 12:01am 28 May will result in a penalty of 10,.000 ( ten thousand dollars ) USD per day until delivery unless the delay is caused by an act of nature or god (see clause 14 )

09.2    Landed Terms or as stated on the proforma invoice within the continental U.S.

## CLAUSE 10 - PACKAGING & LABELLING

10.1    Standard packing as provided by manufacturer.

## CLAUSE 11 – TERMINATION

11.1    Either Party may terminate the Agreement if the other Party fails to comply with a material term, obligation or condition of the Agreement and does not remedy the failure within ten (10) days after receiving written notice, unless such material breach is not capable of being cured, in which case the Agreement shall be terminated ten (10) days after written notice of the breach, unless the non-breaching party desires the termination to be effective on a later date, which date shall be specified in the notice.

11.2    All notices, requests, consents, claims, demands, waivers and other communications hereunder (each, a "Notice") shall be in writing and addressed to the Parties at the addresses set forth on the first page of this Agreement or to such other address that may be designated by the receiving party in writing. All Notices shall be delivered by personal delivery, nationally recognized overnight courier (with all fees pre-paid), facsimile (with confirmation of transmission) or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only (a) upon delivery to the receiving parties address, and (b) if the party giving the Notice has complied with the requirements of this Clause.

11.3    Either party may terminate this Agreement in the event of the bankruptcy, insolvency, reorganization or liquidation of the other party hereto or if the other party hereto ceases to operate its business in the ordinary course.

## CLAUSE 12 - TAXES, OBLIGATIONS, AND IMPORT

12.1    If applicable, Facilitator shall inform and instruct Purchaser with respect to any withholding tax or other taxes, assessments or governmental charges that may be required under any laws and regulations and applicable for Purchaser under this Agreement.

12.2    Facilitator shall not be liable for any action taken, suffered or omitted to be taken by it except to the extent that a final adjudication of a court of competent jurisdiction determines Facilitator breached an obligation under this agreement, or engaged in negligence or willful misconduct, any of which resulted in any damage to the Purchaser.

12.3    The Facilitator is solely responsible for determining whether, and to what extent any taxes apply to the Facilitator for any transactions it conducts in connection with this Agreement, and to withhold, collect, report and remit the correct amounts of taxes to the appropriate authorities. Purchaser shall not be liable for any taxes owed to foreign governments and all taxes are included in the purchase price.

## CLAUSE 13 - APPLICABLE LAW

13.1 Governing Law. This agreement will be governed by and construed in accordance with the applicable laws of the United States of America, State of Texas, exclusive of its choice of law provisions. The United Nations Convention on Contracting for the International Sale of Goods shall not apply. All claims, disputes and other matters in question arising out of or relating to this Agreement or the breach thereof shall be decided by

arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then existing, unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing with the other party to the Agreement and with the American Arbitration Association within one year after the claim, dispute or other matter in question has arisen. The seat of arbitration shall beat a location to be mutually agreed upon and the language of the arbitration shall be English. There shall be one (1) arbitrator who shall be appointed by the Chairman of the AAA. The arbitrator will have authority to grant equitable relief, if available. The award, except for punitive damages, will be final and judgment may be entered thereon in accordance with applicable law in any court of competent jurisdiction.

## CLAUSE 14 – FORCE MAJEURE

14.1  Force Majeure is defined as an unforeseeable situation/condition outside the control of the effected party, such as Acts of God, storms, flood, fire, epidemic, disease, quarantine, earthquake, war, military action, government orders, stop-order or strike, etc. that prevents a Party from completing their obligations under this Agreement. This statement is with consideration and understand this scope is operating under the current corona virus pandemic and each Party shall be expected to carry out the deliverables of this Agreement as reasonably can be expected of each Party.

14.2  The Facilitator and the Purchaser shall not be responsible for the non-performance of this Agreement in case of Force Majeure, if timely notice is provided of the Force Majeure condition and no reasonable alternative means of performance are available.

14.3  Should the effect of the Force Majeure continue for more than 30 consecutive days, the Purchaser and Facilitator shall discuss through cooperative negotiation as soon as possible their obligation to continue performance under the terms and conditions of this Agreement.

## CLAUSE 15 - CONFIDENTIALITY

15.1  "Confidential Information" includes any and all confidential, technical, and non-technical information and/or data related to the purchase or sale of the Products and other related assets, businesses and customers up and down the supply chain which information or data Parties may disclose to each other or to which Parties may gain access as a result of the privileged relationship created by this Agreement, however disclosed, whether proprietary to the issuing Party or any third party, and whether or not bearing any legend or marking indicating that such information or data is confidential.

15.2  Parties shall not disclose Confidential Information to any third party other than as may be required by law or with approval of the applicable Party in which the applicable Party shall ensure a Non-Circumvention Non-Disclosure Agreement (NCNDA) is entered into with the third party adhering to this confidentiality as well. This confidentiality clause shall remain in full force and effect for a period of one (1) years following termination of this Agreement.

## CLAUSE 16 – RISK OF LOSS

16.1  Risk of loss for the Products will transfer from the Facilitator to the Purchaser when the Purchaser takes physical possession of the Products.

## CLAUSE 17 – NON-CIRCUMVENTION

17.1 Parties irrevocably agree, and guarantee that neither Party shall directly or indirectly interfere with, circumvent or attempt to circumvent, avoid, bypass or obviate each other's interest, or the interest or relationship between the Parties with producers, sellers, Purchasers, brokers, dealers, distributors, refiners, shippers, financial institutions, technology owners or manufacturers, to change, increase, or avoid directly or indirect payment of established or yet to be established fees, commissions, or

continuance of pre-established relationship or intervene in un-contracted relationship with entrepreneurs, legal counsel, or initiate buy/sell relationships, or corporation, producer, technology owner, partnership, or individual revealed or introduced by one of the Parties to one another in connection with this transaction.

### CLAUSE 18 – GENERAL

18.1 <u>Enforceability.</u> In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Agreement, and will be construed as if such provision(s) had never been contained. No provision, requirement, or breach of this Agreement may be waived by any Party except in writing.

18.2 <u>Assignment.</u> Each party agrees not to assign its rights, or delegate or subcontract its duties and obligations under this Agreement without the prior written consent of all Parties. Any attempt to do so will be considered a material breach of this Agreement.

18.3 <u>Complete Agreement.</u> This Agreement sets forth the full and complete understanding of the Parties as of the Effective Date stated above, and it supersedes any and all agreements and representations between the Parties made or dated prior to the date of this Agreement. This Agreement may only be modified by a writing signed by the Parties.

18.4 <u>Signing Authority.</u> By signing this Agreement, the signor is stating that he/she has authorization to legally bind the Party he/she is representing to the terms of this Agreement. Accordingly, if the signor does not have legal authorization and misrepresents his/her authority, the other Party and/or its client(s) may seek and obtain any legal and/or equitable remedies available.

18.5 An electronic signed copy of this Agreement shall have the same force and effect as an original.

18.6 Except as otherwise herein provided, all rights and obligations hereunder shall inure to the benefit of the successor, assigns, heirs, administrators, and personal representatives of the Parties.

*[Signatures on following page]*

5 of 6

## CLAUSE 25 - SIGNATURES

| The parties hereby agree, to respect the mentioned "Sales and Purchase Agreement" accepted signed sealed as below. ||
|---|---|
| <<FACILITATOR>> | <<PURCHASER>> |
| Represented By: Nathan Barron | Represented By: |
| *Nathan Barron* | *Willie C. John* |
| Title: President | Title: PRESIDENT |

6 OF 6